IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANKO HOLDINGS, L.P., | : | No. 4:14-CV-00274 |
| | : | |
| Plaintiff | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | |
| EXCO RESOURCES (PA), LLC, | : | |
| and ENERPLUS RESOURCES | : | |
| (USA), CORPORATION, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM
September 29, 2014

This case concerns issues of first impression in Pennsylvania in a dispute

over whether an oil and gas land lease was extended or expired by its own terms.

Before the Court is the Defendants' Motion to Dismiss the Plaintiff's Complaint

for failure to state a claim upon which relief can be granted pursuant to Federal

Rule of Civil Procedure 12(b)(6) (ECF No. 6).  For the following reasons, the

Defendants' Motion is granted and the Plaintiff's Complaint is dismissed.

## I.      FACTUAL BACKGROUND

On May 3, 2005, Thomas G. Stubler and Beth B. Stubler ("Lessors" or the

"Stublers") entered into an oil and gas lease ("Lease") granting The Keeton Group,

LLC, the right to operate for oil and gas on 880.95 acres of property situate in

1

Gamble, Cascade, and Mifflin Townships, Lycoming County, Pennsylvania.  <u>See</u>

Notice Removal, Ex. 2, at Ex. A, Feb. 14, 2014, ECF No. 1 [hereinafter Lease].

The Lease expressly defines the Stublers as "Lessor" and The Keeton Group, LLC

as "Lessee."

On February 26, 2007, The Keeton Group assigned all of its right, title and

interest in certain oil, gas, and mineral leases, including the Lease, to eCORP

Resources Partners I, L.P.  Sometime prior to April 8, 2009, eCORP Resource

Partners assigned all its right, title, and interest in the Lease to Chief Oil & Gas,

LLC.  Sometime after September 21, 2010, Chief assigned all its right, title, and

interest in the Lease to EXCO, the Defendant in this case.[1]  <u>See</u> Notice Removal,

Ex. 2, Feb. 14, 2014, ECF No. 1.

The Lease contains a primary term of five (5) years, that expired on May 2,

2010.  The Lease also provided for a 5-year extension of the primary term if the

Lessee made an extension payment within the primary term as follows:

> EXTENSION OF TERM: Lessee may extend the primary term for
> one additional period equal to the primary term by paying to Lessor, at
> any time within the primary term, proportionate to Lessor's
> percentage of ownership an Extension Payment equal in amount to the
> annual Delay Rental as herein described, or by drilling a well on the
> Leasehold which is not capable of commercial production.

---

[1] For the sake of concision and clarity, "Defendant" as used in this opinion encompasses both the current Defendants  and all of the Defendants' predecessors in interest.

Lease, at 1.  Therefore, to effectuate this language and extend the primary term, the Extension Payment was due to the Lessor on or before May 2, 2010.

In January 2006, the Stublers conveyed a portion of the Leased Premises comprised of 731.832 acres known as the "High Farm Tract" to Timbervest Partners Pennsylvania, LLC ("Timbervest").  After Timbervest obtained the property, MK Resource Partners, L.P., an entity identifying itself as the agent for the successor in title to The Keeton Group, transmitted to Timbervest the 2006 and 2007 annual delay rentals for the portion of the Lease covering the High Farm Tract on April 1, 2008.

Thereafter, Chief Oil & Gas, LLC obtained the Lease and, by email dated April 10, 2008, sent to Timbervest a Release in Full for a drill site location on a portion of the High Farm Tract (the "Release"), and also asked Timbervest to ratify the Lease by signing a Ratification of Oil, Gas, and Mineral Lease with respect to the High Farm Tract (the "Ratification").[2]  The Release identified Timbervest as the owner of the surface of Lycoming County Tax Parcel No. 31-306-125 (presumably all or some of the property) and the Ratification acknowledged the Deed and identified Timbervest as the owner of the High Farm Tract.

---

[2] Copies of the Release and Ratification are attached to Plaintiff's Complaint as Exhibit C (ECF No. 1).

On March 25, 2010, more than six weeks before the deadline for extending the term of the Lease, EXCO's predecessor recorded a Notice of Extension of Oil and Gas Lease ("Notice of Extension") that extended the Lease through May 3, 2015.  The Notice of Extension states, in pertinent part:

> WHEREAS, Thomas G. Stubler and Beth B. Stubler, husband and wife, executed and delivered unto The Keeton Group, LLC, that certain Oil and Gas Lease (the "Lease") dated May 3, 2005 . . . covering 880.95 acres, more or less . . . .
>
> . . .
>
> WHEREAS, the Lease contains an extension provision whereby the Lessees may extend the primary term thereof for five (5) additional years, and
>
> WHEREAS, the Lessees have exercised the extension option as granted in the Lease, and have timely paid the additional consideration as set forth executing and filing this instrument of record in order to provide notice to third parties of the extension of the primary term of the Lease . . . .

Def.'s Br. Supp. 6–7, Mar. 7, 2014, ECF No. 7.

As referenced in the Notice of Extension, on March 17, 2010, more than seven weeks before the deadline for extending the term of the Lease, Defendant sent a letter to the Stublers, (i) stating that they were extending the term of the Lease for an additional five years, and (ii) enclosing a check in the amount of $1,761.90 (880.95 acres x $2.00 per acre) for the Extension Payment.  See Def.'s Br. Supp, Ex. 2.  On or about September 21, 2010, Defendant re-issued the

4

Extension Payment to Timbervest.

On July 23, 2010, Defendant recorded a Declaration of Pooling and Unitization Agreement that pooled the interests of a group of oil and gas leases, including the Lease at issue, into a drilling unit titled the "Flook Unit."  On or before July 2011, Defendant EXCO began producing natural gas from the Flook Unit.  In July and October 2011, EXCO and Enerplus began mailing royalty checks to Timbervest for production of gas from the Flook Unit.  EXCO continues to operate a well for the production of gas from the Flook Unit.

In June 2013, Timbervest conveyed the High Farm Tract to Plaintiff Danko Holdings, L.P. ("Plaintiff").  On January 13, 2014, Plaintiff commenced the above-captioned action in the Court of Common Pleas of Lycoming County, Pennsylvania.  Defendants removed the case to Federal Court on February 14, 2014.[3]  As previously articulated, the Plaintiffs assert the lease expired by its own terms and seek a declaratory judgment to that effect, along with pendant claims of

---

[3] Removal is based on diversity jurisdiction under 28 U.S.C. § 1332.  Plaintiff is a Pennsylvania limited partnership with its principal place of business in Pennsylvania.  Defendant EXCO is a limited liability company whose members are EXCO Holding (PA), Inc. and BG US Production Company, LLC.  Defendant EXCO Holding (PA), Inc. is a Delaware corporation with its principal place of business in Dallas, Texas.  BG US Production Company, LLC is a limited liability company whose intermediate members are non-Pennsylvania citizens and whose ultimate member is BG Group PLC, which is a United Kingdom public limited company with its principal place of business in Reading, Berkshire, United Kingdom.  Defendand Enerplus is a Delaware corporation with its principal place of business in Denver, Colorado.  The amount in controversy exceeds $75,000.

ejectment, trespass, and conversion, due to the Defendants' continued operation on the land.  The Defendants assert they extended the Lease by making the proper rental payments according to the plain language of the Lease, and that Plaintiff's Complaint should be dismissed.  Consequently, Defendant filed the pending Motion to Dismiss.

## II.   DISCUSSION

### A.   Legal Standards

#### 1.   Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 662.  The standard seeks to eliminate those claims that do not present "enough" factual matter, assumed to be true, "to raise a reasonable expectation that discovery will reveal evidence" in support of the claims.  Twombly, 550 U.S. at 556.  Where a plaintiff fails to nudge his "claims across the line from conceivable to plausible, [his] complaint must be dismissed." Id., 550 U.S. at 570.

6

To determine the adequacy of a complaint under this standard, a court should: (1) identify the elements of the claim(s); (2) review the complaint to strike conclusory allegations; and the, (3) consider whether the well-plead components of the complaint and evaluate whether all elements previously identified are sufficiently alleged.  <u>Malleus v. George</u>, 641 F.3d 560, 563 (3d Cir. 2011).  All well-pleaded facts must be accepted as true at this juncture.  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210–11 (3d Cir. 2009).

## 2.   <u>Rules of Contract Construction</u>

The Court exercises diversity jurisdiction over this case, and therefore state substantive law applies.[4]  <u>See, e.g.</u>, <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64, 91–92 (1938).  Under Pennsylvania law, "a lease is in the nature of a contract and is controlled by principles of contract law."  <u>T.W. Phillips Gas & Oil Co. v. Jedlicka</u>, 615 Pa. 199, 208, 42 A.3d 261, 267 (2012).  Accordingly, "[t]he object in interpreting instruments relating to oil and gas interests, like any written instrument, 'is to ascertain and effectuate the intention of the parties.'"

---

[4] "In the absence of a controlling decision by the Supreme Court of Pennsylvania , a federal court applying that state's substantive law must predict how Pennsylvania's highest court would decide" an issue.  <u>Berrier v. Simplicity Mfg., Inc.</u>, 563 F.3d 38, 45–46 (3d Cir. 2009).  "In predicting how the highest court of the state would resolve the issue, [the Court] must consider relevant state precedent, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand."  <u>Id.</u> at 46 (internal quotations omitted).

<u>Szymanowski v. Brace</u>, 2009 Pa. Super. 218, 987 A.2d 717, 720 (Pa. Super. Ct. 2009) (quoting <u>Hess v. Jones</u>, 335 Pa. 569, 7 A.2d 299 (1939)).

"It is a generally accepted proposition that when the terms of a writing are plain and unambiguous, there is no room for interpretation or construction since the only purpose of judicial construction is to remove doubt and uncertainty." 11 RICHARD A. LORD, WILLISTON ON CONTRACTS § 30:4 (4th ed. 2013); <u>see also</u> <u>Steuart v. McChesney</u>, 498 Pa. 45, 48–49, 444 A.2d 659, 661 (1982). "The meaning of an unambiguous contract presents a question of law. . . ." <u>Lesko v. Frankford Hosp.–Bucks Cnty.</u>, 609 Pa. 115, 124, 15 A.3d 337, 342 (2011).

**B.    <u>Merits</u>**

In its Motion to Dismiss, the Defendant asserts that Plaintiff's Complaint should be dismissed because the Defendant's predecessor made a timely extension payment and extended the Lease. The Defendant advances two different legal theories to demonstrate that the extension payment tendered to the Stublers extended the Lease. The first argument is that the Stublers were in fact the "Lessors" under the Lease at the time Defendant's predecessor tendered the extension payment. This argument is unavailing.

Second, the Defendant argues that the extension payment to the Stublers successfully extended the Lease because the Plaintiff's predecessor in interest did

not satisfy the Lease's "change of ownership provision."  This argument is persuasive.  The Court addresses the Defendant's arguments in turn.

1.    The Stublers Were Not Lessors In Fact of High Farm Tract

The Defendant's first argument, that the Stublers were the "Lessors" under the Lease at the time they received the extension payment because the Lease defines them as such, has little merit.  The Defendants' simplistic argument is as follows.

The Lease states that a lessee may extend the primary term of the Lease for an additional five years "by paying to Lessor, at any time within the primary term . . . an Extension Payment equal in amount to the annual Delay Rental . . . ." (Compl., ¶ 14; Lease, at 1).  The Lease expressly defines the Stublers, collectively, as "Lessor."  Lease, at 1.  Defendant's predecessor tendered the Stublers an extension payment on March 17, 2010, more than seven weeks before the expiration of the primary term of the Lease on May 3, 2010.  Ergo, the Extension Payment to the Stublers, textually defined as the Lessors in the Lease, was sufficient to extend the primary term.

This argument fails for at least two distinct reasons.  First, it entirely ignores the Stublers' transfer of the interest in the High Farm Tract property, and the corresponding bedrock property law governing the transfer of interests in

leaseholds.  When land is sold by an original lessor, the purchaser of the land steps

into the shoes of the original lessor and can enforce the terms of the original lease.

Nat'l Forge Co. v. Carlson, 307 A.2d 902, 904 (Pa. 1973).  This is doctrinal black-

letter law to such an extent that embellishing the point to anyone beyond first-year

law students borders on ostentatious pedantry.

In this case, the Stublers conveyed the High Farm Tract to Timbervest on

January 5, 2006.  See Compl., Ex. B.  Accordingly, Timbervest stepped into the

Stublers' shoes and became the Lessor of that property as a matter of law well

before the events at issue.  See Carlson, 307 A.2d at 904.  Timbervest was not a co-

tenant or joint-tenant with the Stublers on the entire property, but the sole holder of

a fee simple interest in the portion of the property at issue in this case.  Cf. id.  The

Stublers may remain the Lessors as to the acreage they did not transfer that is not at

issue in this case, but they did not remain the Lessors of the High Farm Tract at

issue here.

Second, were the Court to adopt the Defendant's confused reading of the

Lease and ignore the impact of subsequent events, it would read the Defendants

themselves out of their interest as Lessee.  The Lease expressly designates The

Keeton Group, LLC, the Defendant's predecessor in interest, as the "Lessee."  If

subsequent purchasers of an interest in the land did not step into the shoes of the

original, the Defendants would have no claim to the Lease at all.  Consequently,

this argument is ineffectual and trivial.

>  2.   Plaintiff's Predecessor Did Not Satisfy the Lease's "Change of Ownership" Provision

While the Defendant tendered payment to the Stublers, who were not the

Lessors in fact of the High Farm Tract at the time payment was made, the payment

was sufficient to extend the Lease because of the Lease's "change of ownership"

provision.  The Lease's change of ownership provision provides:

> Lessee shall not be bound by any change in the ownership of the
> Leasehold until furnished with such documentation as Lessee may
> reasonably require.  Pending the receipt of documentation, Lessee
> may elect either to continue to make or withhold payments as if such a
> change had not occurred.

Lease, at 1.

The Court did not find, and the Parties did not supply, any Pennsylvania

authority directly articulating the efficacy of a change of ownership provision in an

oil and gas land lease.  Consequently, the Court relies on persuasive authority and

learned treatises to inform its prediction of how the Supreme Court of

Pennsylvania would decide the issues *sub judice*.  See Berrier, 563 F.3d at 45–46.

Generally, change of ownership provisions protect a lessee from adverse

consequences when a lessor transfers his interest by providing that the lessee is not

bound by such transfer until he is furnished with appropriate documentation

11

evidencing the transfer and new ownership.  See Stady v. Texas Co., 94 P.2d 322,

327 (Kan. 1939).  As a learned treatise explains:

> The change of ownership clause does not serve to relieve the lessee of
> the necessity for paying delay rentals, it merely permits payment to be
> made to the party who was entitled to receive delay rentals before any
> change in ownership was made if no notice of the change is given.

3-37 EUGENE KUNTZ, A TREATISE ON THE LAW OF OIL AND GAS § 37.9 (2011).

Another treatise elaborates on the operation of change of ownership

provisions:

> Where the lessee makes payment to the original lessor in absence of notice
> of the assignment, he has performed his duty and cannot be called upon to
> pay again or suffer the loss of his lease for non-payment.
>
> . . .
>
> Where an assignee of the lessor fails to satisfy these requirements of the
> lease, payment of delay rentals to the lessor is sufficient and prevents
> termination of the lease.

2 WALTER L. SUMMERS, THE LAW OF OIL AND GAS § 15:18 (3d ed. 2011).

Essentially, change of ownership clauses impose conditions precedent to a lessee's

obligation to pay rentals to a new owner of leased land.

Moreover, "[t]he provisions of the change of ownership clause are usually

strictly construed with the result that there must be a literal rather than a mere

substantial compliance with the provisions for giving notice of change of

ownership."  3-37 KUNTZ § 37.9.  Strict enforcement of change of ownership

12

clauses is important because:

> If the lease contains a change in ownership clause but no notice is given under such clause, a change in ownership of the lessor's interest is no excuse for the lessee's failure to pay delay rentals to the former owner of the lessor's interest, and if the lessee relies on the public records and makes payments to persons the lessee believes to be the new owners, such payments are made at the lessee's own peril.

<u>Id.</u>

> Similarly, another treatise states:

> Absent receipt of notice in the manner required by the notice provisions of the assignment clause, the lessee or his assignee acts at his peril in paying rentals other than as provided for by the delay rental clause.  Failure of the assignee to give the lessee notice of a transfer may, or may not excuse the lessee's failure to make a timely tender of delay rental payments.  Likewise, failure of the assignee to give the lessee notice of a transfer will not excuse the lessee from liability for breach of express or implied lease covenants.

4-6 WILLIAMS & MEYERS, OIL AND GAS LAW § 677 (2013).

Courts have demonstrated the validity of these principles in their jurisprudence.  For example, the Supreme Court of Kansas considered the efficacy of a change of ownership provision in an oil and gas lease in the context of delay rental payments, writing:

> It is urged under that provision defendant was under no duty to pay the rentals until it had been furnished with authentic information as to the change of land ownership.  We think that provision was intended to protect the lessee where he has paid rentals to the lessor in the absence of the specified notice of a transfer or assignment.  In other words, in the absence of such notice, a transfer or assignment is not

binding on the lessee and upon payment to the lessor the lessee will
not be subjected to double liability.

Stady, 94 P.2d at 327.

The United States Court of Appeals for the Fifth Circuit articulated similar

reasoning concerning a defendant that was compelled to make delay rental

payments to extend a lease when it contained a change of ownership provision, and

there was a change of ownership:

> The inescapable fact is that defendant was compelled to make the
> payment in conformity with the specific provision of the 1976 lease.
> They were forbidden by the lease from taking a successors' word as to
> his successorship for purposes of payment (Par. 9: "regardless of any
> actual or constructive notice").  It has been generally accepted that the
> lessee's better course in such "catch 22" situations is to comply with
> the literal terms of the lease, regardless of the lessee's actual or
> constructive knowledge and to direct payment to the original lessor
> until the stipulated evidence of change of ownership is furnished.  The
> Lessee is protected when he relies on failure to furnish proof of
> change of ownership, but is not protected when he relies on anything
> else.

Lapeze v. Amoco Prod. Co., 842 F.2d 132, 135 (5th Cir. 1988).[5]

---

[5] Other courts have articulated similar consistent principles when interpreting different
change of ownership provisions.  See, e.g., Brubaker v. Branine, 701 P.2d 929, 933 (Kan. 1985)
("In this case, the lessee was never notified of the change of ownership.  If the lessee had
received notice, the lessee would have had a *contractual* duty to pay the plaintiffs, and failure to
do so would have resulted in breach of contract.  However, in the absence of notice, there was no
contractual duty running from the lessee to the plaintiffs, and the lessee was in compliance with
the contract by paying 100% of the landowners' royalties to the defendants."); Lee v. Gulf Oil
Exploration & Prod. Co., 318 N.W.2d 766, 769 (N.D. 1982) ("In the instant case [the lessee]
attempted to make the payment but because the successors in interest did not adequately or
properly inform [the lessee] of such acquired interest in the manner provided for in the lease, [the
lessee] could not and did not make the payments without assuming some risk of making payment

Constructive notice is generally not sufficient to obviate the language of a change of ownership provision that specifically requires a lessor to provide documentation.  See, e.g., Stady, 94 P.2d at 327.  A lessee should not be subject to liability both to make delay payments and to investigate the ownership of the property each time it makes a payment, relying on public records that may themselves be erroneous in rare instances.  It is wiser to place the burden to notify the lessee of the change of ownership on the party seeking to be paid, which is exactly what a strict enforcement of these clauses accomplishes.

Even when a lessee has actual notice of a transfer of interest, courts will enforce change of ownership clauses strictly according to their unambiguous terms. An Ohio Court of Appeals recently decided that a lessee's actual notice of a transfer did not obviate the requirements of a change of ownership clause, writing:

> In the instant case, [the lessee] discovered the change in ownership
> through its own investigation.  Nevertheless, [the lessor] did not fulfill
> the condition precedent in the Lease, thereby [the lessor] was not
> entitled to forfeiture of the Lease and [the lessee] was not obligated to
> pay the yearly delay rental payments.

Trico Land Co. L.L.C. v. Kenoil Producing, L.L.C., 2014-Ohio-1700, 2014 WL

---

to the wrong party or parties . . . ."); Hanks v. Wilson, 633 So.2d 1345, 1350 (La. Ct. App. 1994) ("Obviously, the purpose of a clause such as Paragraph 9 is to protect the lessee against the possibility of losing a lease by reason of failure to pay rentals, royalties or other payments to the person entitled thereto after a change in the ownership of the land or interest therein of any person previously entitled to receive such payment.").

1572698 (Ohio Ct. App. Apr. 17, 2014).

In the case before the Court, Defendant's predecessor in interest was not furnished with any documentation evidencing the transfer of ownership of the High Farm Tract from the Stublers to Timbervest. Accordingly, the plain language of the change of ownership clause applies. Defendant's timely payment to the Stublers effectively extended the Lease.

The fact that the Defendant made royalty payments to Timbervest and subsequently re-issued a delay rental payment to Timbervest does not alter the analysis. The Defendant complied with the plain language of the Lease, which states: "pending the receipt of documentation, Lessee may elect either to continue to make or withhold payments as if such a change had not occurred." Lease, at 1. The Court will not punish the Defendant's attempts to be thorough by re-issuing a payment when the Defendant strictly complied with the terms of the Lease in the first instance.

Nor does it affect the analysis that the Defendant acquired its interest in the land after the transfer from the Stublers to Timbervest already occurred. The Plaintiff asserts that a single case decided by a Texas state appellate court that cuts against the vast weight of authority supporting strict enforcement of change of ownership clauses should persuade this Court. It does not.

16

In the case, <u>Jones v. Clem</u>, 2012 Tex. App. LEXIS 2473, *7 (Tex. App. Eastland Mar. 29, 2012), that court found that the lessee could not seek the protection of the lease's change of ownership provision because the transfer of interest from a previous lessor to the lessor of record in the case occurred before the lessee acquired its interest.  The court based its decision on the fact that the lessee had constructive notice of the earlier change of ownership because the deed conveying the interests between lessors was a matter of public record.  <u>Jones</u>, 2012 Tex. App. LEXIS 2473, at *9–11.  Furthermore, the court noted a Texas statute requiring that notice be given to a lessor when there is a new lessee/payor under an oil and gas lease—a statutory requirement that does not exist in Pennsylvania.  <u>See id.</u> at *8.

Notwithstanding that statutory requirement, <u>Jones</u> cuts against, but does not alter the cogent legal analysis in the overwhelming weight of authority.  That authority places the burden on successors in interest to furnish lessees with appropriate documentation, even with evidence of the change of interest being present in the public record.  <u>See, e.g.</u>, <u>Stady</u>, 94 P.2d at 327.

Adopting the Plaintiff's asserted posture not only contravenes the language of the Lease, but also inappropriately imposes multiple layers of liability on lessees.  Under that framework, a lessee must not only make delay rental payments,

17

but discern who the payments should be made to each and every time, and to make payments to differing parties at its peril. See, e.g., 3-37 KUNTZ § 37.9. Rather, the Lease's plain language placing the burden on the lessor means what it says: that the "Lessee shall not be bound by any change in the ownership of the Leasehold until furnished with such documentation as Lessee may reasonably require." Lease, at 1.

The Plaintiff argues further that the clause does not protect the Defendant because a lessee cannot "reasonably require" documentation when it has actual or constructive notice of a transfer. This is an erroneous reading of the Lease. The "reasonable" qualifier applies not to the issue of whether or not Defendant may require the documentation itself—the Lease's requirement of *some* documentation is unquestionable. The reasonable qualifier applies to the quality, nature, and extent of the documents that a lessor must furnish the Defendant. It functions as a safeguard for both parties.

For example, if the Plaintiff's predecessor personally furnished the Defendant's predecessor with the best evidence of the transfer available, perhaps the deed and other documents demonstrating the conveyance, the Defendant could not "reasonably require" more and the provision would have been satisfied. If the Plaintiff's predecessor furnished something less, such as a phone call stating a

18

transfer had occurred, it is likely the Defendant's predecessor could have "reasonably required" more substantial proof of the conveyance before the provision would be satisfied.

Accordingly, the Plaintiff's predecessor did not satisfy the change of ownership provision, the Defendant appropriately relies on that provision, and the Defendant's predecessor's payments to the Stublers was sufficient to extend the Lease by its own express terms. Because this issue is dispositive of the Defendant's Motion to Dismiss and the Plaintiff's Complaint, the Court need not reach the additional arguments advanced by the Parties.

## III.   CONCLUSION

The requirements of the Lease's change of ownership clause are dispositive of this case. Because the Plaintiff's predecessor did not furnish the Defendant's predecessor with documentation evidencing a change of ownership of the leased property, the Defendant's predecessor's timely payment to the Stublers was sufficient to extend the Lease by its own terms. Accordingly, the Defendant's Motion to Dismiss is granted and the Plaintiff's Complaint is dismissed.

An appropriate Order follows.

BY THE COURT:

s/ Matthew W. Brann
Matthew W. Brann
United States District Judge